David LEINOFF, Plaintiff,

v.

VALERIE FURS LTD. and Schreibman–Raphael, Inc., Defendants.

David LEINOFF, Plaintiff,

v.

VSR ASSOCIATES, Bert Fishman, Raul Raphael, Seymour J. Schreibman, Defendants.

Nos. 78 Civ. 3088, 79 Civ. 1259 (CBM).

United States District Court, S. D. New York.

Sept. 19, 1980.

Curtis, Morris & Safford, P.C. by Pasquale A. Razzano, New York City, for plaintiff; Lackenbach, Lilling & Siegel by Burton L. Lilling, Bruce E. Lilling, Scarsdale, N.Y., of counsel.

Joseph H. Schindler, New York City, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MOTLEY, District Judge.

### Nature of the Action

Plaintiff, David Leinoff, has instituted this action for infringement of United States Letters Patent No. 3,760,424. The jurisdiction of this court is premised upon the existence of a federal question with the amount in controversy in excess of $10,000 and also upon this court's original jurisdiction over actions arising under the United States patent laws. 28 U.S.C. § 1338(a); 35 U.S.C. § 281. Defendants have interposed a counterclaim for declaratory judgment to invalidate the above-referenced patent. 28 U.S.C. §§ 2201, 2202.

### Parties

David Leinoff (Leinoff), the sole owner of David Leinoff, Inc., is in the business of manufacturing and selling fur coats. Defendants Valerie Fur Ltd. (Valerie) and Schreibman-Raphael, Inc., (Schreibman) are New York corporations engaged in manufacturing and selling fur coats. Defendant, VSR Associates (VSR) is a New York partnership which purchases and sells fur coats manufactured by Valerie and Schreibman. Plaintiff and defendants are competitors in the fur business.

After a trial on the merits of all claims, the court makes the following findings of fact and conclusions of law.

### The Leinoff Patent

The Leinoff Patent No. 3,760,424, issued on September 25, 1973 by the United States Patent Office, concerns composite fur pelts and details and method of manufacture, from longhaired animal pelts, composite fur pelts and fur coats which feature a distinctive chevron striped pattern. There are two groups of claims under the Leinoff Patent: Claims 1 through 4 concern composite pelts as a product of the manufacturing technique. Claims 5 through 8 delineate the method of manufacturing these composite pelts and fur coats.

Claim 1 sets forth a composite pelt made from fur strips cut from a long-haired pelt. This pelt has pelt hairs whose tips are dark;

the remaining hairs, located between the pelt skin and the pelt tips (referred to as the "underground") are light. The fur strips are then connected to and alternated with leather connector strips. Claim 1 further states that the width of the fur strips and leather connector strips are specifically defined in a dimensional relationship to one another so that the overlap of the dark pelt tips with the light underground produces a striped effect on the fur side of the pelt. Specifically, Claim 1 states that the width of the leather connector strips is to be "greater than the length of the dark tip portions of the pelt hairs and less than the length of the pelt hairs [the "underground"]" and that "the pelt hairs on said fur strips extend across adjacent [leather] connector strips with the dark tips of the pelt hair overlying the light portion of the pelt hairs, thereby to expose said light portion of the pelt hairs and produce a striped effect."

Claim 2 states that the pelt is to be cut at an angle of 45° to produce the chevron effect demonstrated in the drawing contained in the patent. Claim 3 states that the connector strips are to made from leather. Claim 4 states that a "plurality" of composite pelts are to be manufactured into a coat.

Turning to the second set of claims, Claim 5 sets forth the method of manufacturing fur coats with the composite pelts defined in Claims 1–4. The specific steps involved in this manufacturing technique, as set forth in Claim 5, are: 1) cutting the pelt into strips; 2) maintaining the cut strips of the pelt in a position unchanged from their ordinary relative positions in an uncut pelt; 3) inserting a leather insert strip of a specified width in relation to the pelt hair [underground] length between adjacent fur strips; and 4) attaching the inserts to the fur strips.

Claim 6 repeats the steps on other pelts and states that the pelts be assembled into a coat. Claim 7 states that the fur strips are to be held together along the uncut edge of the pelt, as shown in Figure 4 of the Patent, after the cutting step. Claim 8 defines the pelt as a badger pelt.

## CONCLUSIONS OF LAW

Title 35, Section 101 provides that an inventor may obtain a patent for any new and useful process or manufacture. Novelty, 35 U.S.C. § 102, and non–obviousness, 35 U.S.C. § 103, are the conditions that must be met to establish patentability. Under Section 102, patentability is not established if the invention is identically disclosed by prior art. *See Ling–Temco–Vought, Inc. v. Kollsman Instrument Corp.*, 372 F.2d 263 (2nd Cir. 1967); *Nelson Planning Limited v. Tex–O–Graph Corp.*, 280 F.Supp. 226 (S.D. N.Y. 1968), *aff'd*, 423 F.2d 36 (2d Cir. 1970).

■ None of the prior art relied upon by defendants discloses each of the elements of the Leinoff invention in the identical fashion as set forth in the Claims; thus, the condition necessary to defeat patentability–complete anticipation of all elements of the invention–is not found on these facts. As a result, it appears to this court that defendants' primary attack on the validity of the Leinoff claims is founded on the contention that the Leinoff invention was "obvious" within the meaning of 35 U.S.C. § 103.

Before this court considers the issue of "obviousness," the initial point of departure in the analysis of the validity of the Leinoff patent claims is the existence of the statutory presumption of validity of all patents. 35 U.S.C. § 282. Defendants–or, more specifically, those that seek to attack the validity of a patent–have a heavy burden of establishing the invalidity of a patent already aided by this statutory presumption. *Rich Products Corp. v. Mitchell Foods, Inc.*, 357 F.2d 176 (2d Cir.), *cert. denied* 385 U.S. 821, 87 S.Ct. 46, 17 L.Ed.2d 58 (1966). "Where the prior art relied upon by defendants in attacking the validity of the patent is no more relevant than that which was cited and considered by the Patent Office, this presumption remains effective." *Brennan v. Mr. Hanger, Inc.*, 479 F.Supp. 1215 (S.D.N.Y. 1979). This court concludes that defendants have not successfully rebutted this presumption by their reliance upon prior art of the furrier trade, represented, in this action, by the Post and Schatz patents.

*See Champion Spark Plug Co. v. Gyromat Corp.*, 603 F.2d 361 (2d Cir. 1979).

In challenging the validity of the Leinoff claims, defendants rely on the following United States Patents that were before the Patent Examiner during the prosecution of Leinoff's application in the Patent Office. The "Post" patent, U.S. Patent No. 2,558,-279, was issued on Oct. 20, 1925. This patent reveals a technique of manufacturing two neck scarves from a single animal skin where only one scarf had been formed previously. The goal of this manufacturing technique is to cut and arrange the skin in a way so that the fur side of the pelt retains its natural (unbroken) appearance. The pelt is cut in such a way so that, to a non–expert observer, it is impossible to discern any substitution or addition of foreign material to the original skin. This technique teaches the technician to cut the skin down the center into two sections, and then each section is cut into strips. Then alternate strips are removed and replaced with narrow leather strips so that the resulting composite pelt is the same size as the original pelt. The leather inserts are the same size as the fur strips that have been removed. The removed fur strips are then connected to one another by leather strips in the same manner to produce a duplicate of the original fur pelt section. Thus, the result of the Post patent is to manufacture two skin sections without changing the appearance of the fur side of the pelt and the appearance of these pelts is indistinguishable from the original skin.

The second patent relied upon by defendants to establish the invalidity of the Leinoff patent is U.S. Patent No. 2,196,273 issued to Morris Schatz on April 9, 1940. The Schatz patent details a leathered and let–out fox tail in which the tail is elongated but without materially altering the natural colored pattern of the fur of the tail. The tail is cut into strips and then leather strips and inserted between the fur strips to lengthen the tail.

Defendants also rely upon a text book entitled "Advanced Fur Craftmanship" by Samuel Raphael (Raphael), and a fur coat sold in 1969 by Milton Feldman, a furrier. Raphael contains a description of the "leathering" technique.

In the case at hand, both the Post and Schatz patents were prior art that was examined by the Patent Officer prior to the issuance of the Leinoff patent. The description of the "leathering" technique in Raphael is not any more pertinent than the inventions of Post or Schatz. The Feldman coat, simply indicating the insertion of leather into fur, is also not more significant or pertinent than the Post or Schatz patents. Accordingly, the presumption of the validity of the Leinoff patent remains intact.

*Obviousness*

The Leinoff patent, which may also be referred to as a combination patent, involves a combination of well–known furrier manufacturing techniques–"leathering" and "letting out." Seizing upon the use of these techniques in the Leinoff patent, defendants vigorously argue that the patent should be declared invalid on the ground of obviousness since the invention was fully disclosed by the prior art.

The resolution of the issue of obviousness, as all courts have painfully recognized, is extremely difficult. With respect to combination patents, as here, the Supreme Court has repeatedly admonished lower courts to "scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." *Great A. & P. Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950); *see Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 281, 96 S.Ct. 1532, 1537, 47 L.Ed.2d 784 (1976). As the Second Circuit observed: "It is idle to say that combinations of old elements cannot be inventions; substantially every invention is for such a 'combination': that is to say, it consists of former elements in a new assemblage." *Reiner v. I. Leon Co.*, 285 F.2d 501, 503 (2d Cir. 1960); *accord, Champion Spark Plug Co. v. Gyromat Corp., supra.* The Leinoff patent is a combination patent, that is, a combination of "old" elements of "letting out" and

"leathering" purportedly assembled and used, as plaintiff claims, in a new manner. As such, this court will abide by the cautionary guidelines established by the Supreme Court and weigh the arguments with extreme care.

The method used to resolve the issue of obviousness pursuant to 35 U.S.C. § 103 was established by the Supreme Court in *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966), where it stated:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or non–obviousness, these inquiries may have relevance.

*Accord, Anderson's–Black Rock, Inc. v. Pavement Salvage Co.*, 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); *Sakraida v. Ag–Pro, Inc., supra.*

Whether the difference between the claimed invention and prior art "[r]ises to the level of patentability depends on the level of ordinary skill in the art. It is difficult to set forth any meaningful quantitative evaluation of the level of skill in a given art." *Reeves Instrument Corp. v. Beckman Instruments Inc.*, 444 F.2d 263, 271 (9th Cir.), *cert. denied*, 404 U.S. 951, 92 S.Ct. 283, 30 L.Ed.2d 268 (1971). Since the level of ordinary skill "has not usually been defined in writing, the usual way of determining such level is by referring to the subjective reaction of a person thoroughly familiar with the particular art and, if possible, one who practiced the art at the crucial time in question." *Malsbary Manufacturing Co. v. Ald, Inc.*, 447 F.2d 809 (7th Cir. 1971).

However, Supreme Court decisions subsequent to *Graham* seem to suggest that the issue of obviousness may be resolved before reaching "secondary considerations." As the Supreme Court observed in *Anderson's–Black Rock, supra*, 396 U.S. at 61, 90 S.Ct. at 308: "It is, however, fervently argued that the combination filled a long felt want and has enjoyed commercial success.

But those matters 'without invention will not make patentability'." (citation omitted).

One of the most recent pronouncements of the Second Circuit squarely ruled that secondary considerations may be weighed only if a preliminary determination has been reached on the issue of obviousness or non–obviousness.

> "Any theory that 'secondary considerations' must be given weight before a determination of obviousness can be made was laid to rest in *Sakraida* . . .
>
>    *   *   *   *   *   *
>
> Only in a close case, in which application of the subjective criteria of non–obviousness in 35 U.S.C. § 103 does not produce a firm conclusion, can these objective or secondary considerations be used to 'tip the scales in favor of patentability.' . . . Because we hold that the claims made here are clearly obvious we need not examine secondary considerations."

*Digitronics Corp. v. New York Racing Ass'n, Inc.*, 553 F.2d 740, 748–49 (2d Cir.), *cert. denied*, 434 U.S. 860, 98 S.Ct. 187, 54 L.Ed.2d 133 (1977); *accord, Brennan v. Mr. Hanger, Inc., supra.*

With respect to combination patents, the *Graham* criteria are further augmented by the requirement that the result of the combination must be synergistic, that is "result[ing] in an effect greater than the sum of the several effects taken separately." *Sakraida v. Ag–Pro, supra*, 425 U.S. at 282, 96 S.Ct. at 1537; *accord, Anderson's–Black Rock, supra.* Or, stated in another way, to be categorized as synergistic, the several elements of the claimed combination "cooperate to produce a highly desirable new result not theretofore obvious . . . ." *Brennan v. Mr. Hanger, Inc., supra* at 1225.

Although these recent Supreme Court decisions have "caused massive consternation among members of the patent bar," *id.* at 1224, and many courts have refused to apply the "synergism" test, *see Republic Industries, Inc. v. Schlage Lock Co.*, 592 F.2d 963 (7th Cir. 1979); *Plastic Container Corp. v. Continental Plastics of Oklahoma, Inc.*, 607 F.2d 885 (10th Cir. 1979), the Second Circuit nonetheless follows this test. The Second Circuit, however, cautioned that the *Sakraida* decision does not override "the statutory test of unobviousness, established by 35 U.S.C. § 103 along with the analytical guidelines for that test established by the Court in *Graham* ... which the opinion in *Sakraida* cites with approval." *Champion Spark Plug Co., supra* at 372. Rather, if "the application of obvious means to an obvious function has 'synergistic' results that would not be obvious to one of ordinary skill in the art, a patent still may issue." *Digitronics Corp., supra* at 747.

In sum, to arrive at a resolution of the issue of "obviousness," with respect to combination patents the law in the Second Circuit is that the three–fold test of *Graham* is to be applied and then, if the function of elements of the inventor is known or obvious, the synergism test is to be considered. If synergism is found, then the invention, from the viewpoint of its result is *not* obvious and thus entitled to patentability.

### a. Scope and Content of Prior Art

The Post and Schatz patents, and Raphael as examples of prior art have already been discussed. Defendants also cite a blue fox coat, made in 1969 by a furrier, Milton Feldman. According to Feldman's testimony, this coat is made by cutting a blue fox pelt along chevron–shaped lines spaced approximately three inches apart, with each section of the pelt retaining its natural appearances. Pieces of leather 1¼ or 1½ inches wide are sewn between these fur sections to lengthen the pelt and to produce a physical separation or groove in the fur at each cut on the fur side. This in turn produces the appearance of chevron–shaped bands of fur separated by leather bands.

### b. Difference Between Claimed Invention and Prior Art

Post, Schatz, Raphael and Feldman together reveal the use of leather strips inserted between adjacent strips or sections of fur cut from an animal pelt. However, not one of them discloses the specific combination of the elements contained in the Leinoff claims.

One of the features of the Leinoff claim is a composite pelt. Leinoff adds leather to the pelt in a specific dimensional relationship to create, on the fur surface a color contrast, or striped appearance on the surface of the fur pelt. By contrast, the Post patent substitutes leather for fur strips, resulting in a thinner, but not a longer, pelt whose natural appearance is not disturbed.

The Schatz pattern uses a fox tail, and not a pelt as in the Leinoff claim. Schatz inserts leather strips in cuts made in the tail to elongate the tail but, again, without materially altering the natural color pattern of the *animal*. Moreover, although the width of the leather strips is specified, it is not specified in relation to the tips of the pelt hairs, as in the Leinoff claim.

The Raphael book discusses the "leathering" technique whereby the leather is inserted either vertically or diagonally in the pelt to widen it. In Raphael, the increase in the length is accomplished by "letting out" the pelt before leathering. Again, Raphael does not describe a dimensional relationship between the leather strips nor does he describe the exposure of the underground to the surface of the coat.

In sum, neither the Post, Schatz nor Raphael examples of prior art recognized that a break in a pelt could be expanded across the entire pelt to form a stripe and that the stripe, if repeated at every narrow strip of fur in a cut up pelt, would lengthen, widen and thin the pelt, and produce a flat fur striped surface.

Feldman's blue fox coat does not disturb the natural appearance of the animal coat from which the pelt is obtained. The only

purpose of the inserted leather strips is to separate the pelt into separate sections of pelt. The resulting look is a bulky coat with natural fur pelts separated by "grooves" of leather. Thus, none of the prior art discloses these key features of the Leinoff claims: 1) the cutting of a long-haired animal pelt with tips of a different color than the underground and then inserting the connecting leather strips between the fur strips to expose the underground to produce a striped appearance; 2) relating the width of the leather strips to lengths of the pelt tip hairs and underground to duplicate the strips without exposing the leather; 3) width of the fur strips is related to the leather strips so that all hairs of the fur strip overlap the leather strip to the adjacent fur strip. Furthermore, a composite pelt is manufactured whose natural appearance is altered to form a flat surface whose appearance is that of a complete animal pelt rather than sections of a natural pelt.

### c. Level of Ordinary Skill in the Art

In the case at hand, the level of skill must be measured by the skill of furriers in the trade, such as Post, Schatz, Leinoff, Feldman and Raphael. The skill in the furrier business is primarily mechanical insofar as it entails a proper selection of skins, and cutting and sewing to assemble furs into coats by known techniques. However, at the time of the Leinoff invention, the entire cast of the furrier trade was to maintain in the product the natural appearance of the fur of the respective animals. Nowhere was there a method for altering the natural appearance of the fur surface to produce a repetitive, "artificial" design.

■ Against this background, it appears to this court that the methods used to compose the Leinoff pelts and coats were well known in the furrier trade; in other words, these elements had obvious functions: "letting out"–lengthening the pelt and "leathering"–widening it. However, the mere fact that discrete elements of a manufacturing technique each have an obvious function is insufficient to defeat a claim for patentability of combination patents. This court's analysis may not stop at its determination of obvious function, for this finding triggers the next step in the analysis of patent validity, which is the issue of whether the result of a combination of known elements is "synergistic."

The most startling feature of the Leinoff patent is the result–the production of an appealing fur surface that does not retain the natural or original appearance of the animal pelt. Thus, the critical question to be resolved with respect to the patentability of the Leinoff patent is whether the flat, striped, feathered effect, the result of known fur manufacturing techniques, is synergistic. *Sakraida v. Ag–Pro, Inc., supra.*

■ As discussed above, even if old or "obvious" components comprise an invention, if these components produce a "synergistic" result the invention is patentable as the result is "an effect greater than the sum of the several effects taken separately." *Anderson's–Black Rock, Inc. v. Pavement Salvage Co., supra.* An examination of the technique of insertion of leather into pelts before the Leinoff claims reveals that, at most, the fur pelt was either lengthened or widened but the natural appearance of the animal pelt was always maintained, even though certain techniques, as shown by the Feldman coat, provided for physical separations or grooves in the pelt. Leinoff's claims, by providing for the use of fur and leather strips in specific dimensional relationships not only produced a pelt that was wider, longer and thinner–each of which are results anticipated by the leathering and letting out techniques–but also produced a striking contrast between the fur tips and the underground, creating a striped, feathered effect not contemplated by these "old" techniques. The court thus finds that the result of these known techniques of leathering and letting out utilized in a different manner than in the past have been combined in the Leinoff claims to produce a synergistic effect entitling the claim to patentability. This result, although it may appear simple in hindsight, is sufficiently unexpected, given the prior state of

the art, to merit patentability. Apparent simplicity does not necessarily bar patentability.

"'If those skilled in the art are working in a given field and have failed to discover a particular new and useful improvement, the person who first makes the discovery does more than make the obvious improvement which would suggest itself to a mechanic skilled in the art, and is entitled *to protection as an inventor.'* [Furthermore, a] flash of brilliance which found a solution, however simple, by departing from the norm ... is [the] type of advancement that has traditionally been rewarded with patent rights ...." *U.S. Philips Corp. v. Natural Micronetics, Inc.*, 553 F.2d 716, 723 (2d Cir.), *cert. denied*, 434 U.S. 859, 98 S.Ct. 183, 54 L.Ed.2d 131 (1977), (*quoting, McCullough Tool v. Well Surveys, Inc.*, 343 F.2d 381, 399 (10th Cir. 1965), *cert. denied*, 383 U.S. 933, 86 S.Ct. 1061, 15 L.Ed.2d 851 (1966)).

*CONCLUSION*

This court holds that the requirement of "non–obviousness" under 35 U.S.C. § 103 has been met on the facts of this case. Plaintiff's patent has the synergistic result sufficient to merit patentability. Accordingly, defendants' claims must fail.