**David LEINOFF, Plaintiff,**

v.

**LOUIS MILONA & SONS, INC., Defendant.**

**No. 81 Civ. 1107 (CBM).**

United States District Court, S.D. New York.

May 11, 1982.

Curtis, Morris & Safford, P.C., by Pasquale A. Razzano, New York City, for plaintiff.

Darby & Darby, P.C., by Michael J. Sweedler, Joel K. Dranove, New York City, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MOTLEY, District Judge.

*Nature of the Action*

By this action, plaintiff David Leinoff seeks an injunction and damages as a result of alleged infringement of U.S. Patent No. 3,760,424 by defendant Louis Milona and Sons, Inc. Defendant, in addition to asserting that the Leinoff patent is invalid under 35 U.S.C. §§ 102 and 103, also offer as a defense that plaintiff is barred from asserting this cause of action by the doctrine of laches. Jurisdiction of this court is invoked under 35 U.S.C. § 281, 28 U.S.C. §§ 1331 and 1338(a).

*Parties*

Plaintiff, David Leinoff (Leinoff) is the sole owner of David Leinoff, Inc., a fur manufacturing and selling company. Defendant, Louis Milona and Sons, Inc., is a New York corporation which manufactures and sells fur coats alleged to have infringed the Leinoff patent. Plaintiff and defendant are competitors in the fur business.

After a trial on the merits of all claims, the court makes the following findings of fact and conclusions of law.

*The Leinoff Patent*

The Leinoff Patent, U.S. Letters Patent No. 3,760,424 was issued to the plaintiff on September 25, 1973. It contains eight claims. Claims 1–4 concern composite [animal] pelts and claims 5–8 relate to the method invented by Leinoff to manufacture a fur coat. A detailed description of the claims was delineated in *Leinoff v. Valerie Furs, Ltd.,* 501 F.Supp. 720 (1980) in which this court upheld plaintiff's patent, so only a short description of the Leinoff method of coat manufacturing will be explained here.

Briefly, the patented method describes a technique by which leather strips in a specified width in relation to the hairs of the animal pelt are inserted between animal pelts that have been cut into strips and laid in a position unchanged from their ordinary relative positions in an uncut pelt. Long-haired animal pelts, such as badger, are used for this process. Prior to the invention of this method, long-haired pelts were not ordinarily used in the manufacture of coats because of their relative bulkiness. This composite method results in a much longer and flatter looking fur than would be the case of such fur used in its natural state. The Leinoff method makes use of "underground" hairs of the pelt (lighter colored hairs located between the pelt skin and tips). The fur strips and leather connector strips are connected in such a way that there is an overlap between the dark tips of the pelt hair and the light portions of the underground. This produces a striped or "chevron" effect. Leinoff's patented method represented a departure from the prior teaching in the art of fur manufacture, because up until he attempted it, it was always taught that the underground should not be exposed. It was not known until Leinoff tried it then, that this procedure would materially alter the natural appearance of the fur and create the unique striped or chevron effect. Finally, although he made use of two known techniques in the fur trade, "leathering" and "letting out," Leinoff's method nonetheless was held to produce a synergistic effect under 35 U.S.C. § 103, 501 F.Supp. at 727.

*Conclusions of Law*

*Validity*

■ The point of departure for the court's determination is the statutory presumption of the validity of all patents. 35 U.S.C. § 282 (1976); *CTS Corp. v. Electro-Materials Corp. of America,* 469 F.Supp. 801 (S.D.N.Y.1979). Moreover, the presumption is strongest where the Patent Office has granted the patent with knowledge of the prior art. *Champion Spark Plug Co. v. Gyromat Corp.,* 603 F.2d 361, 366 n. 11 (2d Cir.1979); *Dennison Mfg. Co. v. Ben Clem-*

*ents & Sons, Inc.,* 467 F.Supp. 391, 406–07 (S.D.N.Y.1979). The effect of this presumption is that the alleged infringer must assert the invalidity of the patent, while the patent holder is relieved of establishing the patent's validity in an infringement action. *Lorenz v. F.W. Woolworth Co.,* 305 F.2d 102, 105 (2d Cir.1962). This court's previous holding of validity of the patent in *Valerie Furs, supra,* did not consider the new prior art brought before the court in the instant action. Therefore, before that court's prior holding of validity may be overturned, the burden on the defendant is to establish *de novo* that the prior art presented is materially different from that previously considered such as to render the patent invalid. *See Cathodic Protection Services v. American Smelting and Refining Co.,* 594 F.2d 499, 505 (5th Cir.1979); *Julie Research Labs Inc., v. Guidline Instruments, Inc.,* 501 F.2d 1131 (2d Cir.1974); *Illinois Tool Works, Inc. v. Foster Grant Co., Inc.,* 547 F.2d 1300, 1303 (7th Cir.1976). In *Valerie Furs,* the court in reaching its determination examined two previously granted patents that were also before the Patent Office during the prosecution of plaintiff's patent, a fur coat made by Milton Feldman, and a book, "Advanced Fur Craftsmanship," by Raphael. Since it was discussed in detail in the previous opinion, it need only be discussed briefly here. The "Post" patent, No. 2,558,-279 delineates a method of manufacturing two neck scarves from a single skin where only one was previously possible. This is done by cutting the pelt in half, removing fur strips, and inserting leather strips in their place. The removed fur strips are also leathered in this fashion, and the result is two duplicate pelts the same size as the original one. The "Schatz" patent, No. 2,196,273 describes a similar leathering process on a fox tail which is elongated by letting-out and leathering. In both of these processes, there is no material alteration in the natural pattern or appearance of the fur. The Raphael book discloses the use of leather strips to widen a pelt. The Feldman coat also indicates the insertion of leather into fur. 501 F.Supp. at 723.

It is defendant's contention in this case that its newly cited prior art is more pertinent than that considered by the court in the *Valerie Furs* case, and that the evidence presented herein anticipates the subject matter of the patent in suit. Further defendant argues that "if there is any difference, it is one of appearance only and one which would have been obvious to a skilled fur operator at the time of the invention." (Def's post-trial brief, p. 2). Defendant's challenge is therefore based upon invalidity for lack of "novelty", 35 U.S.C. § 102, and "obviousness", 35 U.S.C. § 103.

■ Based on the written submissions prepared by the parties, its assessment of the testimony and evidence presented by both sides, and an extensive review of the record, the court concludes that the prior art relied upon by defendant is neither persuasive nor materially different enough from that presented in *Valerie Furs,* which record was received in this action in evidence, to successfully rebut the presumption of validity accorded the patent in suit.

*35 U.S.C. § 102 (Lack of Novelty)*

■ An invention is not novel, and therefore not patentable if it is anticipated, i.e. "known or used by others in this country or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent." 35 U.S.C. § 102(a). *See also, Id.* § 102(b). Patentability under Section 102 is not established if the invention is identically disclosed by the prior art. *See Ling-Temco-Voight, Inc. v. Kollsman Instrument Corp.,* 372 F.2d 263 (2d Cir.1967). "To anticipate a claim, a prior art reference must show each and every element claimed." *General Elec. Co. v. United States,* 572 F.2d 745, 768 (Ct.Cl.1978). In other words, the general rule is that under Section 102, the challenger must prove that all elements of the invention, or its equivalents, are to be found in a preexisting single description. *Kahn v. Dynamics Corp. of America,* 508 F.2d 939 (2d Cir.1974), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1657, 44 L.Ed.2d 88. None of the prior art relied upon by defendant recites each of the elements of the Leinoff patent in the identical fashion as set forth in the claims. Therefore, defendant has failed to show that the Leinoff patent is invalid because of complete anticipation of all elements of the invention. A perusal of defendant's submitted exhibits makes this finding of the court clear on the facts.

Defendant relies on the publications of Exhibits D, E, F, G, H, M, O and P. Of these the most relevant is Exhibit P, but it too fails to produce or suggest producing the effect of the Leinoff invention. Exhibit D, the German Language textbook, "Die Technik Der Kurschnesei" states that "Japanese" badger may be leathered to lengthen a fur pelt. Defendant's expert witness failed to state what Japanese badger is, what the coloration of its hairs are, or whether an obvious striped effect would be produced on the fur side of the pelt. (R. 77, 80, 81). Similarly, Exhibit F, "The Fur Book," also describes the processes of leathering and letting out fox pelts for lengthening. Exhibit E, "Practical Fur Cutting and Furriery" describes a technique of lengthening or widening fox pelts by inserting leather into a pelt with a "thick undercoat." Diagrams 62 and 63 of this exhibit, which show leather inserted vertically, do not change the natural appearance of pelt, (as does the Leinoff invention). (Testimony of Mr. Fox, defendant's expert, R. 85). Diagram 63 of Exhibit E shows leather inserts placed in the direction of the pelt hairs to increase length. This is merely a description of the well-known technique of letting-out combined with a leathering process, similar to that used in the Raphael book presented in the *Valerie Furs* case. 501 F.Supp. at 725. Indeed, defendant can be seen to rely on these well-known techniques in Exhibit G, "Pictorial Encyclopedia of Furs," (insertion of ribbon and tape used to reduce the bulk and thickness of silver fox); Exhibit O, (instructs the practitioner to double the length of the pelt by insertion of leather strips); and Exhibits H and M, which are two editions of the same book, "Der Kurschner." In Exhibit M, the process of "gallooning" is described as "enlarging a skin ... by working in a suitable

number of narrow leather strips ...." The exhibit goes on to state that "the appearance of the hair may be *improved* (emphasis added) by loosening the material," but also cautions against "pulling apart the wool hair." Gallooning, as described in these exhibits, and Exhibit P (discussed *infra*), is nothing more than "leathering," the process described by Raphael and Kaplan, the author of Exhibit F. The testimony of defendant's expert (R. ——) and Mr. Leinoff (R. ——) support this finding. Nowhere in defendant's exhibits is there the suggestion that the practitioner can combine these known elements of letting-out and leathering to create a material alteration in the appearance of the fur. Nor do they suggest exposing the underground to achieve the "chevron" effect which is the hallmark of the Leinoff invention. Thus, the court concludes that the defendant's claims of invalidity under 35 U.S.C. § 102, for lack of novelty, fails on these facts.

*35 U.S.C. § 103 (Obviousness)*

The test for patent validity under Section 103 poses three fact questions: "the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved." *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966). *See also, Champion Spark Plug Co. v. Gyromat Corp.*, 603 F.2d 361 (2d Cir.1979). The Leinoff patent which is a combination patent, uses, as stated before, a combination of known furrier manufacturing techniques, specifically leathering and letting-out. It is defendant's contention, that, as these techniques are known, the patent should be declared invalid on the ground of obviousness. The Supreme Court has advised lower courts to "scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." *Great A & P Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950); *Sakraida v. Ag-Pro, Inc.*, 425 U.S. 273, 281, 96 S.Ct. 1532, 1537, 47 L.Ed.2d 784 (1976). We now turn to the three levels of inquiry mandated by *Graham, supra*.

*1. Scope and Content of the Prior Art*

The prior art presented and considered shows that long haired furs such as badger and fox have been leathered (gallooned) and let out in the past. There is nothing new in this revelation, as it was dismissed in *Valerie Furs, supra*. The most critical claim of defendant, occurs in its submitted Exhibit P, a German publication entitled "Rauchwarenherstellung und Pelzkonfektion." That publication which describes "gallooning" mentions that the galloons, (leather strips) may be inserted for, among other purposes, "achieving fashion effects." Does this mean that the author knew or intimated that galloons could be used to create a material alteration of the appearance of the fur, or a chevron effect? The court, after carefully weighing the evidence finds the answer to be no. The exhibit (Exh. P) states (p. 2) that the "undercoat is not to be separated," which is the essence of the Leinoff method. Claim 1 of the Leinoff patent states that the light portion of the pelt hairs is exposed to produce a striped effect. 501 F.Supp. at 722. Moreover, Exhibit P also states that in gallooning to achieve effects, the galloon is to be "visible" either by being made of a different color, so that it stands out from the rest of the material," or, by being wider than the rest of the material so that it "interrupts the profile effect of the fur cross-section." (p. 3) Contrary to defendant's urging, the court finds the suggestion of Exhibit P to be a creation of gaps or grooves in the fur by (as in the Feldman coat) the use of either wide galloons or different colored galloons, and not to constitute a material alteration in the "natural" appearance of the fur creating a striped effect.

Defendant further presented in evidence two pelts which were allegedly made according to the teaching of the Post patent, (Exhibit K), and another allegedly made according to Exhibit P's specifications (Exhibit C). These pelts were made shortly before the respective trials. The court concludes that they are not prior art within the

meaning of 35 U.S.C. § 102, and that they could not have been made according to the specifications of the published materials and have achieved the results shown.

### 2. Differences Between the Prior Art and Claims in Issue

Defendant urges that the only material difference shown by comparing the prior art with the claimed subject matter is that the latter states that the leather strips when inserted "expose said light portions of the pelt hairs and produce a striped effect." (Defendant's Proposed Findings of Fact and Conclusions of Law, p. 18). This is correct, and it is the reason that it would not be obvious to one skilled in the fur trade to expose the light pelt hairs. As this court stated in Valerie Furs, supra, "[a]t the time of the Leinoff invention, the entire cast of the furrier trade was to maintain in the product the natural appearance of the fur of the respective animals. Nowhere was there a method for altering the natural appearance of the fur surface to produce a repetitive, 'artificial' design." 501 F.Supp. at 726.

### 3. Level of Ordinary Skill in the Art

In a patent infringement action, the level of ordinary skill in the art is judged from the point of view of a hypothetical person who is "charged with knowledge of all that the prior art disclosed at the time of the alleged invention, irrespective of whether persons of ordinary skill in the field ... actually possessed such all encompassing familiarity with prior disclosures." Walker v. General Motors Corp., 362 F.2d 56, 60 n. 3 (9th Cir.1966); see David & David, Inc. v. Myerson, 388 F.2d 292, 294 (2d Cir.1968). Moreover, obviousness involves questions not only of what the references expressly teach, but what they would collectively suggest to one of ordinary skill in the art." Application of Simon, 461 F.2d 1387, 1390, 59 CCPA 1140 (1972). In the instant case, the court finds that leathering, and letting-out, the methods used in the Leinoff pelts were commonly known in the art of fur manufacture.

Nonetheless, the teaching to one of ordinary skill was to use these methods purely for lengthening or widening the fur, and not to alter the natural appearance. The court thus holds that the Leinoff method was not obvious to one ordinarily skilled in the art of fur manufacture, because it is a radical departure from the teaching of the art of fur manufacture. Thus, Leinoff's invention is not "obvious" within the meaning of 35 U.S.C. § 103. Having thus found, the next step in the court's analysis is whether the combination patent created from known elements produces a synergistic result. Sakraida v. Ag-Pro, Inc., supra.

Even if old components combine to comprise an invention, if these discrete parts produce a "synergistic" result, the invention is patentable. Anderson's Black-Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969). Examination of the technique used in the prior art discloses, as in Valerie Furs, supra, that "at most, the fur pelt was either lengthened or widened but the natural appearance of the animal pelt was always maintained, even though certain techniques ... provided for physical separations or grooves in the pelt." 501 F.Supp. at 726. Since the court has determined that the prior art presented in this action does not materially differ from that presented in the previous case, it holds, as it did before, that "the result of these known techniques of leathering and letting-out utilized in a different manner than in the past have been combined in the Leinoff claims to produce a synergistic effect entitling the claim to patentability. This result, although it may appear simple in hindsight, is sufficiently unexpected, given the prior state of the art, to merit patentability." Id. at 726, 727.

### 35 U.S.C. § 112

Defendant challenges the Leinoff patent under 35 U.S.C. § 112 alleging that the claims are indefinite with respect to the meaning of the term "width dimension" because the claim does not state that the pelt hairs extend at an angle across the leather strips. Section 112 of Title 35 states that "The specification shall conclude

with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." The language of the claim with which defendant differs states "[i]t is important to provide the desired angular relationship between strips and the normal attitude of the hairs on the pelt. The hairs must extend across the leather strip at the desired angle." (Col. 2, lines 14–18). Defendant contends that this description is indefinite because if the essence of the invention lies in the striped effect, which requires a sufficient angle between the pelt hairs and the fur strip, that the claim is indefinite for failure to so state.

The court finds no merit in this challenge. The evidence and testimony of defendant's own expert, (R.113) indicate that one skilled in the art will not have trouble ascertaining the correct width dimension and producing the patented invention relying on a reading of the patent in suit. As the Second Circuit stated in *Georgia Pacific Corporation v. United States Plywood Corporation,* 258 F.2d 124 (2d Cir.1958), *cert. denied,* 358 U.S. 884, 79 S.Ct. 124, 3 L.Ed.2d 112, Section 112 serves two purposes:

> [t]hose skilled in the art must be able to understand and apply the teachings of the invention ... enterprise must not be discouraged by the creation of an area of uncertainty as to the scope of the invention. On the other hand, the policy of the patent statute ... would be defeated if protection were to be accorded only to those patents which were capable of precise definition. The judicial function requires a balancing of these competing considerations in the individual case." (258 F.2d at 136).

In applying this balancing test, the court finds that, as it is clear from the patent description what the purpose of the leather inserts are, it is also clear that the term "width dimension" can only refer to that dimension of the connecting strips which causes the spacing of the fur strips to create the stripes, and that the "width dimension" is to be measured in the direction in which the pelt hairs lie. It is inconceivable that this would not be obvious to a furrier

skilled in the trade. This finding is corroborated by the testimony of defendant's witness, and by a careful reading of the patent claims. Indeed, once one has gained even a less than ordinary understanding of the art, it becomes clear what the meaning of the patents' words are.

The last question for the court to consider is whether this suit is barred by the doctrine of laches because of an unreasonable delay by the plaintiffs in bringing this infringement action. 35 U.S.C. § 281. Delay alone is not the only question to consider when deciding whether a suit is barred by this doctrine. Where there is evidence that defendants relied on any delay by patentee or were lulled into any position to their prejudice, or materially changed their position as a result of any reliance on any acts by patentee, the patentee is not barred by laches from maintaining the infringement action. *Foster v. Magnetic Heating Corp.,* 297 F.Supp. 512 (S.D.N.Y.1968), *aff'd* 410 F.2d 12 (2d Cir.) *cert. denied,* 396 U.S. 829, 90 S.Ct. 82, 24 L.Ed.2d 80 (1969). As the party has not shown any of the above criteria, the doctrine of laches may not be invoked in this instance.

## CONCLUSION

This court holds that the requirement of obviousness under 35 U.S.C. § 103, lack of novelty, under 35 U.S.C. § 102, and indefiniteness under 35 U.S.C. § 112 have not been met on the facts of this case. The court further holds that plaintiff's action is not barred by the doctrine of laches under 35 U.S.C. § 281, for despite delay, defendants have shown no damage as a result of plaintiff's failure to timely proceed. Accordingly, defendant's claims of invalidity must fail.