David LEINOFF, Plaintiff,

v.

LOUIS MILONA & SONS, INC.,
Defendant.

No. 81 Civ. 1107 (CBM).

United States District Court,
S.D. New York.

Jan. 8, 1983.

Curtis, Morris & Safford, P.C., by Pasquale A. Razzano, New York City, for plaintiff.

Darby & Darby, P.C., by Michael J. Sweedler, Joel K. Dranove, New York City, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MOTLEY, Chief Judge.

*Nature of the Action*

This is an action, pursuant to 35 U.S.C. §§ 271 *et seq.,* for patent infringement. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Plaintiff is the owner of United States Letters Patent No. 3,760,424, and seeks, *inter alia,* an injunction and damages for the alleged infringement of his patent. The court has previously tried the issue of the validity of the patent and, by Findings of Fact and Conclusions of Law filed May 11, 1982, 556 F.Supp. 273, found plaintiff's patent to be valid.

*Background*

Plaintiff and defendant are competitors in the wholesale and retail fur coat business. Plaintiff's patent, issued on September 25, 1973, contains eight claims described in detail in *Leinoff v. Valerie Furs, Ltd.,* 501 F.Supp. 720 (S.D.N.Y.1980), and more briefly in the Findings of Fact and Conclusions of Law filed in the instant action on

May 11, 1982. In essence, plaintiff's patent describes a technique whereby fur strips and leather strips are alternated in a manner which produces composite fur pelts with a chevron or "feathered" patterning. A major feature of plaintiff's invention is the material change which the technique effects in the appearance of the pelts, to wit, the creation of a striped or chevron effect not naturally present in the pelts.

Plaintiff alleges that defendant Louis Milona & Sons, Inc. (Milona), infringed this patent from October or November of 1973 until this action was initiated in February of 1981. On January 8, 1974 and on December 8, 1980, plaintiff demanded that defendant discontinue the sale of allegedly infringing products. Defendant did discontinue such sales when this action was commenced.

### Findings of Fact

Certain long-haired fur pelts are characteristically comprised of hairs which are light colored at the base or "underground" and darker at the tip portion. Some such pelts, particularly badger pelts, may also have small portions of white at the extreme ends of the dark tip portions. The court finds that this fact would be known and understood by skilled furriers.

The "underground" portion of such furs is somewhat wooly in nature, and is not generally visible in pelts in their natural state. However, plaintiff's patented technique exposes this "underground" to create a composite pelt with a striped appearance.

At trial, plaintiff produced an example of the coats sold by defendant which were alleged to infringe plaintiff's patent. The example produced was made from eight badger pelts, cut into strips of substantially equal width, which strips were alternated with leather connector strips also of substantially uniform width. Measured in the direction at which the pelt hairs overlapped the leather, the leather connector strips had a width dimension greater than the dark tip portions of the pelt hairs, but smaller than the total length of the pelt hairs. This construction exposed the lighter "underground" portions of the pelts, producing a chevron effect not naturally present in badger pelts. In sum, defendant's coat was manufactured in the manner described in plaintiff's patent.

Defendant's secretary-treasurer, Stergios Milona, testified at trial that he could not recall defendant ever selling a badger coat or jacket which did not have leather insert strips similar to those in the coat described above. He further testified that not all the badger coats and jackets sold by defendant had a chevron pattern, but that he could recall none that did not have striping of some sort. The court finds that defendant's badger coats and jackets were all manufactured of composite pelts.

The testimony at trial established that the fox coats sold by defendant as "feathered" fox were also produced by interspersing leather strips and fur strips as described above. This technique, however, would not always produce a striped or chevron appearance when the fur used was fox. The unrefuted testimony of Mr. Milona established that silver and white fox pelts do not have dark tipped hairs and thus cannot be made to appear striped or chevron patterned by use of plaintiff's technique. Blue fox pelts, however, do have dark tipped hairs. When blue fox is dyed a dark color such as taupe, the color variegation disappears, but natural blue fox and blue fox dyed with "vin rosé" dye retain their dark tipped appearance. Therefore, natural blue fox and vin rosé dyed blue fox are susceptible of manufacture in a manner which would infringe plaintiff's patent. The court finds that they were so manufactured.

Defendant also sold chevron patterned natural stone marten coats. Stone marten has a very light "underground," and the chevron pattern in defendant's stone marten coats was created by inserting leather strips to expose the underground. Mr. Milona testified that a chevron pattern can also be created by splitting stone marten pelts, and that he could not recall which method was used in fabricating the stone marten coats sold by defendant. However, such testimony notwithstanding, defend-

282

ant's own public relations materials state that the chevron pattern was produced by the use of leather inserts. (Plaintiff's Exhibit 40). The court so finds.

Feathered and dyed raccoon coats designed by Kasper were also sold by defendant. Mr. Milona testified that the leather pieces inserted in the Kasper coats were of varying sizes and placed at varying distances of up to ten or twelve inches apart. The court finds that the feathered raccoon coats designed by Kasper and constructed as described by Mr. Milona would not have had a chevron or striped pattern and were not constructed in the manner set forth in plaintiff's patent.

Plaintiff placed in evidence a number of Milona invoices which indicate sales by defendant of a number of allegedly infringing coats. The invoices reflect sales of nineteen badger coats for a total of $51,195, three feathered blue fox coats dyed vin rosé and six natural feathered blue fox coats for a total of $16,134, one feathered and dyed raccoon coat for $1495, and eight natural chevron stone marten coats for a total of $8580. The court has disregarded the voided invoices included in the exhibit.

## Conclusions of Law

■ It is beyond dispute that the scope of the protection afforded by a patent is determined by the claims of the patent. *Great A & P Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 149, 71 S.Ct. 127, 128, 95 L.Ed. 162 (1950), *reh. denied*, 340 U.S. 918, 71 S.Ct. 349, 95 L.Ed. 663 (1951). However, the court may also look to the patent's drawings and specifications for clarification, for "to do otherwise would be to proceed in a vacuum." *Maclaren v. B–I–W Group, Inc.*, 535 F.2d 1367, 1372 (2d Cir.1976).

■ Claims 1 through 4 of the instant patent pertain to composite fur pelts, while claims 5 through 8 are concerned with the method used to manufacture fur coats. Claim 1 describes the creation of a composite pelt. Unlike the other claims, claim 1 does not require a chevron pattern, but includes the creation of a striped effect within its ambit.

Defendant asserts that plaintiff's patent has not been infringed by defendant's sales of badger jackets and coats because the patent claims make no reference to the white coloration on the extreme ends of the dark tipped portions of badger pelt hairs. However, claim eight of plaintiff's patent expressly invokes the protection of the patent to badger coats, and, as stated above, the presence of this variation in badger pelt hairs is a matter which would be known and understood by skilled furriers. The court therefore finds that the presence of this small white area does not, as a matter of law, withdraw badger pelts from the scope of the protection afforded by plaintiff's patent.

Defendant also asserts that, since plaintiff's patent requires that the leather connector strips have a width dimension greater than the dark tipped portion of the pelt hairs, and since the widths measured varied between 1.106 and .898 centimeters, while the length of the dark tipped portions is approximately 1 centimeter long, some stripes infringe and some stripes do not. This, defendant claims, shows that it is not the insertion of leather strips of a specified size, but the displacement of the fur which creates a striped or chevron effect in the composite pelts. "Hence," claims defendant, "there is no infringement." (Defendant's Reply Brief at 3). The court disagrees.

The significance of the leather strips in plaintiff's process is their insertion in such a manner as to displace the dark tips "a sufficient distance ... to expose the inner light portions" or underground of the fur. (Remarks accompanying plaintiff's patent Amendment at 18). The leather strips are used by plaintiff to obtain this displacement, and hence their width is significant insofar as it determines the amount of displacement. However, a variation of two-tenths of a centimeter in the width of the leather strips is not realistically likely to change the overall effect, particularly in light of the fact that each hair of each pelt is certain to vary somewhat.

Defendant points out that a chevron or striped effect can admittedly be obtained without the use of leather strips at all. The court notes that, this being the case, defendant could have made and marketed chevron patterned coats without utilizing plaintiff's technique, and avoided the instant suit altogether.

The court finds that defendant's badger coats, as exemplified by plaintiff's Exhibit A, infringe claim 1 and claim 8 of plaintiff's patent. The court further finds that the "feathered" natural blue fox coats and the "feathered" vin rosé blue fox coats sold by defendant infringe claim 1 of the patent. The court has no evidence before it as to whether stone marten pelt hairs have dark tips as specified in the patent. Accordingly, no infringement is found as to the chevron patterned stone marten coats sold by defendant. As previously stated, the raccoon coats designed by Kasper do not infringe the patent.

Although this court, in its Findings of Fact and Conclusions of Law filed May 11, 1982, addressed defendant's claim that the doctrine of laches should bar any recovery by plaintiff, defendant subsequently claimed that it had not understood laches to be in issue at the trial on the patent's validity. Accordingly, the court permitted defendant to address that issue anew.

Defendant's position is that, had the instant action been filed earlier, defendant would have ceased any arguably infringing sales earlier, thus limiting its potential liability to far fewer sales. The court finds this to be speculative at best, and notes that defendant could have limited its liability upon receipt of plaintiff's demand letter of January 8, 1974, had it been so inclined. The court does not find this assertion to be evidence of prejudice to defendant caused by plaintiff's delay in filing suit.

Defendant further asserts that, pursuant to the decision of Judge Lowe in *Lemelson v. Carolina Enterprises, Inc.,* 541 F.Supp. 645 (S.D.N.Y.1982), prejudice to defendant must be presumed in this case. However, as defendant is doubtless aware, the presumption in *Lemelson* was applied only as to claimed infringements which had taken place over six years prior to the filing of the plaintiff's suit. None of the infringements found by this court occurred more than six years prior to the filing of the instant suit. Accordingly, the court stands by its original finding that the doctrine of laches does not bar plaintiff's recovery in this action.

*Damages*

■ The parties have stipulated that a 5% royalty would be a reasonable measure of damages for any infringement found in this action. Thus, a royalty of $3,366.45 would be due on the $67,329 worth of coats here found to be infringing.

Plaintiff, however, asserts that treble damages should be assessed due to the willfulness of defendant's infringement. Defendant asserts that this is not a case of such deliberate infringement as to warrant increased damages. Plaintiff sent a demand letter to defendant on January 8, 1974. Defendant made no inquiry into the validity of plaintiff's claim of infringement but simply ignored the letter. Plaintiff sent a second letter on December 8, 1980. Again, defendant was unresponsive. Only when plaintiff filed suit did defendant cease its sale of the allegedly infringing items. Basically, defendant showed no concern for whether plaintiff had a patent, what rights it granted plaintiff, or whether defendant was infringing those rights until plaintiff sued.

> The Courts have traditionally been reluctant to find an infringement wilful. There must be a deliberate purpose to infringe and such a purpose is not found where the validity of the patent and any possible infringement is open to honest doubt.

*Upjohn Co. v. Italian Drugs Importing Co.,* 190 F.Supp. 361, 367 (S.D.N.Y.1961). The court fails to see, however, how defendant could have entertained any honest doubts when, by Mr. Milona's own testimony, plaintiff's letter was ignored. Having made no effort to ascertain the scope of the patent, or its validity, defendant's approach can be seen only to have been one of delib-

erate indifference, or wanton infringement. Accordingly, treble damages are awarded.

Plaintiff also seeks an award of interest and attorneys fees pursuant to 35 U.S.C. §§ 284 & 285. Although defendant has had use of moneys which would properly have been payable to plaintiff as royalties from the time of each sale, the court finds that interest from the date of the last infringement is reasonable under all the circumstances.

■ As to attorneys fees, such an award is available only in "exceptional" cases, such as "where a party's actions unnecessarily prolong the litigation." 35 U.S.C. § 285; *W.L. Gore & Associates, Inc. v. Carlisle Corp.,* 205 U.S.P.Q. 507, 512 (D.Del.1979). There may well be some merit to plaintiff's assertion that defendant was not justified in challenging this court's prior finding of the validity of plaintiff's patent. However, there is no evidence of bad faith, and this court is not willing to discourage attorneys from that vigorous representation of clients which their Code of Professional Responsibility demands of them. Accordingly, no award of attorneys fees will be granted.

In sum, the court concludes:

1.) that defendant has infringed plaintiff's patent number 3,760,424;

2.) that defendant has infringed said patent as to merchandise having a total sales price of $67,329.00;

3.) that a 5% royalty of $3,366.45 would have been payable on said infringing sales;

4.) that treble damages in the amount of $10,099.35 shall be imposed for said infringement;

5.) that interest is awarded on said damages from the date of the last infringement at the rate of 9%.

Submit Order on five days notice within ten days of receipt of a copy of this opinion.